# ORIGINAL

1  LEONARDO M. RAPADAS
   United States Attorney
2  MARIVIC P. DAVID
   Assistant U.S. Attorney
3  Suite 500, Sirena Plaza.
   108 Hernan Cortez Ave.
4  Hagåtña, Guam  96910
   PHONE:  472-7332
5  FAX:  472-7334

6  Attorneys for the United States of America

**FILED**

DISTRICT COURT OF GUAM

JUN 15 2007 *nbo*

MARY L.M. MORAN
CLERK OF COURT

7

8

9  **IN THE UNITED STATES DISTRICT COURT**

   **FOR THE DISTRICT OF GUAM**
10

11                                                        **07-00013**

12  UNITED STATES OF AMERICA,           )      MAGISTRATE CASE NO. _____
                                        )
13                      Plaintiff,      )
                                        )
14         vs.                          )      **PETITION FOR WRIT**
                                        )      **OF REMOVAL**
15                                      )
    LOUIS J. PEARLMAN,                  )
16                                      )
                        Defendant.      )
17                                      )
    _____ )
18

19         Petitioner, United States Attorney for the District of Guam, respectfully shows this Court that:

20         On March 2, 2007, a Criminal Complaint was filed in the United States District Court for the

21  Middle District of Florida, against the Defendant LOUIS J. PEARLMAN, under Magistrate Case No.

22  07-MJ-1079.  The Defendant was charged with Bank Fraud, in violation of 18 U.S.C. §§ 1344 and 2.

23  See Exhibit A.  Subsequently, the United States District Court for the Middle District of Florida issued a

24  Warrant for Arrest of Defendant.  See Exhibit B.  The Defendant was later arrested by a Special Agent of

25  the Federal Bureau of Investigation in Guam.

26  //

27  //

28  //

1    WHEREFORE, petitioner prays this Court to issue a Warrant of Removal pursuant to

2    Fed.R.Crim.P. 5(c) for said Defendant to be removed from the District of Guam to the Middle District of

3    Florida.

4        Dated this  15th  day of June, 2007.

5

6                                          LEONARDO M. RAPADAS
                                           United States Attorney
7                                          Districts of Guam and NMI

8

9                               By:        _____

10                                         MARIVIC P. DAVID
                                           Assistant U.S. Attorney
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                 -2-

**FILED**

## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

ORLANDO, FL
3-2-07

U.S. MAGISTRATE JUDGE

UNITED STATES OF AMERICA

**CRIMINAL COMPLAINT**

vs.

CASE NUMBER: 07-MJ- 1079

LOUIS J. PEARLMAN

I, the undersigned complainant, being duly sworn, state the following is true and correct

to the best of my knowledge and belief.

On or about September 18, 2004, in Orange County, in the Middle District of Florida,

and elsewhere, defendant did,

knowingly execute and attempt to execute a scheme and artifice to defraud
Integra Bank, a financial institution whose deposits were insured by the Federal
Deposit Insurance Corporation, and knowingly execute and attempt to execute a
scheme and artifice to obtain moneys, funds, credits, assets, and other property
owned by and under the custody and control of Integra Bank, a financial
institution whose deposits were insured by the Federal Deposit Insurance
Corporation, by means of false and fraudulent pretenses, representations, and
promises

in violation of Title 18, United States Code, Sections 1344 and 2.

I further state that I am a Special Agent with the Federal Bureau of Investigation, and

that this Complaint is based on the following facts:

### SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof: ☒ Yes  ☐ No

Signature of Complainant
Scott R. Skinner

Sworn to before me and subscribed in my presence,

March 2, 2007                              at      Orlando, Florida

JAMES G. GLAZEBROOK
United States Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

**EXHIBIT**
A

STATE OF FLORIDA                                Case No. 07-MJ- *1079*

COUNTY OF ORANGE

## AFFIDAVIT

Before me, the undersigned, personally appeared, Scott R. Skinner, who being duly

sworn, deposes and states:

## I. INTRODUCTION

1.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have

been so for approximately eighteen years.  I am currently assigned to the Tampa Division,

Orlando, Florida Resident Agency Criminal Squad.  During the course of my career, I have

investigated numerous criminal matters, including investment fraud, securities fraud, wire fraud,

mail fraud, money laundering, bank fraud, boiler room fraud,  Ponzi schemes, computer fraud

and internet fraud.  I have assisted in investigations related to tax fraud.  I have a B.S. Degree

from Indiana State University with a major in accounting and a minor in computer science.  I

took and passed the Indiana Certified Public Accountant (CPA) Exam and worked in public

accounting for five years prior to being employed by the FBI.  During the time I practiced as a

CPA, I gained knowledge of the reporting and licensing requirements of CPAs.

2.      This affidavit is based upon information known to me personally and derived

from this investigation, as well as information obtained from others, either involved in this

investigation or who have personal knowledge of the facts herein.  These individuals specifically

include, but are not limited to, the following:

      a.      Special Agent Annette Waldon, Internal Revenue Service

1

  b.  Financial Investigator Danielle Brooks, State of Florida, Office of Financial Regulation (OFR), Bureau of Financial Investigations

  c.  Special Agent John Crawford, Federal Deposit Insurance Corporation (FDIC), Office of Inspector General.

Because this affidavit is submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging LOUIS J. PEARLMAN with bank fraud related to Integra Bank, it does not set forth each and every fact that I or others have learned during the course of this investigation.

## II. OVERVIEW OF ENTITIES AND INDIVIDUALS

3.  According to filings submitted to the Florida Secretary of State, Trans Continental Airlines, Inc. (Trans Con Airlines) is a Florida Corporation with its principal place of business located at 127 West Church Street, Suite 350, 3rd Floor, Orlando, Florida 32801.

4.  LOUIS J. PEARLMAN (PEARLMAN) is listed as the President and Registered Agent by the Florida Department of State, Division of Corporations for Trans Con Airlines.

5.  PEARLMAN's last known primary residence in the United States is located at 12488 Park Avenue, Windermere, Florida 34786.

6.  Integra Bank N.A. (Integra Bank) is a bank with primary offices located at 219 S.E. Third Street, Evansville, Indiana 47708. At all times relevant to this complaint, Integra Bank was insured by the Federal Deposit Insurance Corporation (FDIC).

## III. OVERVIEW OF SCHEME TO DEFRAUD

7.  Based on investigation conducted to date, there is probable cause to believe that LOUIS J. PEARLMAN has committed a violation of 18 U.S.C. § 1344 (bank fraud).

2

8.      In particular, there is probable cause to believe that PEARLMAN made, and/or caused to be made, a number of fraudulent representations to Integra Bank, a bank insured by the FDIC.  The fraudulent representations were made in conjunction with the issuance and monitoring of loans made by Integra Bank to Trans Con Airlines and/or PEARLMAN.   Integra Bank relied upon the fraudulent representations in granting the loans and allowing the loans to remain outstanding.   Those fraudulent misrepresentations included: (1) the use of documents purportedly prepared by an accounting firm known as Cohen & Siegel; (2) claims that loan payments were forthcoming from a German bank known as either German Investment Und Finanzberatung GmbH or German Savings;  (3) claims that Pearlman and his corporate entities were financially sound; and (4) the submission of false tax returns to Integra Bank.

## IV.  COHEN & SIEGEL

9.      On numerous occasions, PEARLMAN and others acting on his behalf and with his authorization have provided federally insured financial institutions and others with documents that purportedly were prepared by an  accounting firm known as Cohen & Siegel. Based on investigation that has been conducted to date, it appears that Cohen & Siegel has been fabricated and that there is no such accounting firm.

10.      On February 13, 2007, I communicated with Edwin Brooks, who is an attorney for the estate of Joseph Chow, about litigation that is taking place between the Chow estate and Pearlman and some of his entities.  In addition, I have reviewed copies of some of the court filings and depositions related to the litigation.  The following is a summary of what I was told by Brooks and what I reviewed from the court documents that I have reviewed:

3

a.    Joseph Chow was a University of Illinois Engineering Professor who died in 2004. Chow and Pearlman were friends and business associates. During the course of their business relationship, PEARLMAN provided Chow with audited financial statements from the accounting firm Cohen & Siegel. Cohen & Siegel was represented by PEARLMAN to be a German accounting firm with offices in Coral Gables, Florida.

b.    Chow invested millions of dollars in Trans Continental Airline Travel Services, Inc., stock. Chow was mailed statements reflecting his investments, which were prepared on Trans Continental Airlines, Inc. letterhead. In addition to purchasing stock, Chow loaned Trans Continental Records, Inc. approximately $ 3.6 million as evidenced by a promissory note dated May 1, 2004. Chow also invested in the EISA account and received quarterly statements titled "Trans Continental."

c.    After Chow passed away, a dispute arose as to payment of the amounts owed to him. PEARLMAN and the Chow estate are currently involved in litigation regarding that dispute.

d.    In connection with that litigation, the attorney for the Chow estate attempted to locate the Cohen & Siegel accounting firm located in Florida. The attorney was unsuccessful. Instead, the attorney found an answering service in Coral Gables, Florida where Cohen & Siegel was supposed to have offices. When PEARLMAN was confronted by a newspaper reporter about whether Cohen & Siegel was no more than an answering service, PEARLMAN insisted the firm existed and claimed that the Coral Gables, Florida address might be an answering service, but that Cohen & Siegel did have offices in Germany.

4

11.    In connection with the litigation between the Chow estate and PEARLMAN, a sworn deposition was taken of Nancy Morgan on July 8, 2005. I have reviewed that deposition. The following is a synopsis of information from the deposition:

a.    Morgan started Coral Gables Secretarial in May 1998 and is President and sole owner. Coral Gables Secretarial is in the business of providing secretarial, administrative and marketing support to individuals, professionals, corporations and not for profit associations. As of the date of the deposition, Coral Gables Secretarial's address was 269 Giralda Avenue, Suite 302, Coral Gables, Florida 33134. The prior address for Coral Gables Secretarial was 334 Minorca, Suite 100, Coral Gables, Florida 33134.

b.    Coral Gables Secretarial started providing services for Cohen & Siegel in 1995. On March 21, 1995, Morgan was called by an Alan Siegel to establish an account for Cohen & Siegel, a CPA firm. Siegel indicated his company was based out of Orlando, Florida. Morgan identified Siegel as saying the words "Stanley Cohen, CPA Firm". During the telephone conversation, Siegel stated "[f]or his boss, accounting business" and "Airship International" and "Louis Pearlman, Cohen and Siegel P.A." Morgan could not place the words in any type of context during the deposition, but did recall Siegel saying the words by reviewing notes she had created at the time. Morgan did recall that Siegel stated that Cohen & Siegel was an accounting firm and that he was no relation to the Siegel in the accounting firm. Morgan identified the text "Alan Siegel's boss is the man named Louis Pearlman" as being something she was told by Siegel. Morgan made the following note on the memo "I don't really understand yet what their tie in with Cohen and Siegel is, however, it is clear that they have an established business relationship. Perhaps Mr. Pearlman also owns Cohen and Siegel."

5

c.    Siegel told Morgan that he wanted to set up a dedicated line and to have Coral Gables Secretarial answer the phone as "Good morning/afternoon Cohen and Siegel" and that "most of the calls will be for Stanley Cohen." Siegel told Morgan that "Mr. Pearlman may also receive some calls" and instructed Morgan to say "that Mr. Cohen/Pearlman/Siegel is out of the office in a meeting and to take a complete message including name, area code and telephone number."

d.    Morgan stated that Cohen, PEARLMAN, and/or Siegel were never in the Coral Gables Secretarial office. Morgan identified the following statement in her notes: "if a caller asks what kind of business Cohen and Siegel is, we are to reply that it is a CPA firm" on the memo as being something Siegel told her.

e.    Morgan billed PEARLMAN for services Coral Gables Secretarial provided for Cohen & Siegel. Morgan would call the telephone number 407-876-0465 when she received messages for Cohen & Siegel. Morgan faxed a credit application for Cohen & Siegel to Orlando, Florida. Morgan identified the address "9235 Ridge Pine Trail" on the notes as the writing of another employee.

f.    Morgan identified the telephone number 444-8968 as the number set up by BellSouth for Cohen & Siegel. Morgan sent the mail and faxes to PEARLMAN, and she sent the billing for services related to Cohen & Siegel to PEARLMAN. Morgan was paid by a company called Trans Continental Airlines.

g.    Morgan has never met or spoken with either a Cohen or a Siegel from the Cohen & Siegel accounting firm.

6

h.     On September 2, 1998, Morgan sent a letter to PEARLMAN advising him that Dade County officials had seen a Yellow Page ad for Cohen & Siegel and that Dade County was now requiring Cohen & Siegel to get a license.

i.     On or about August 6, 1998, Morgan changed the contact person for Cohen & Siegel from Alan Siegel to Robert Fischetti. On March 8, 2000, the billing address was changed to 12488 Park Avenue, Windermere, Florida 34786. Edgar Montanez called from Bank of America (BOA) on May 23, 2005 and asked for an individual by the name of Steve Kaplan. Montanez wanted to schedule the teleconference for June 15, 2005 in the afternoon or June 16 or 17, 2005 anytime. When Morgan received this message, she called 407-876-0465 and forwarded the message.

j.     Morgan had spoken with PEARLMAN approximately three times prior to the date of her deposition. PEARLMAN first called Morgan and Morgan told PEARLMAN that she had received a subpoena for a deposition. PEARLMAN told Morgan there was nothing to worry about. PEARLMAN called Morgan again and asked for a copy of whatever she provided pursuant to the subpoena.

13.     In connection with the litigation between the Chow estate and PEARLMAN, a sworn deposition was taken of Alan Siegel on September 20, 2005. I have reviewed portions of that deposition. The following is a synopsis of information from the deposition:

a.     Siegel went to work for Air Ship International in 1985. Air Ship International was a New York company affiliated with PEARLMAN. Air Ship International was a blimp company used for aerial advertising. Siegel eventually became a personal assistant for PEARLMAN. Afterwards, sometime around 1988, Siegel became the General Manager for the

7

company. The company moved to Florida in 1991. Siegel worked on the operations side, as opposed to the financial side, and worked closely with Frank Sicoli. Seth Bobet was the accountant for the company. The Florida accounting firm used by the company was Grant & Thornton, specifically Steve Levy. Business eventually slowed to a point where the company merged with Clean Systems, an Israeli company.

      b.     Sometime around 1994, PEARLMAN decided to get out of the blimp business and start a record company. The company PEARLMAN formed was Trans Continental Records. Siegel and Sicoli both went to work for the new company as Vice Presidents. Trans Continental Records had several accountants, including David Pierfy and Kamala Bachus. PEARLMAN was knowledgeable of the bookkeeping and accounting with Trans Continental Records. Siegel did not have much to do with the accounting side of the business. Siegel left Trans Continental Records in 2000 or 2001 to go to work for a large record label, Jive Records. Siegel identified PEARLMAN as being the most knowledgeable person about the finances of the Trans Continental companies.

      c.     When first asked, Siegel denied having any knowledge of the Cohen & Siegel accounting firm, other than hearing PEARLMAN mention the firm. When told that Coral Gables Secretarial answering service indicated that Siegel had set up the Cohen & Siegel firm with them, Siegel recalled that one of the many things that PEARLMAN asked him to do was to call down to South Florida and obtain the services of a secretarial service firm. Siegel did not know for whom the services were obtained. Siegel obtained the contact information for Coral Gables Secretarial and passed the information on to PEARLMAN. Siegel did not recall using the words "Cohen & Siegel" when setting up the secretarial services with Cohen & Siegel. Siegel

8

did not recall ever contacting or visiting the secretarial service firm and/or receiving any information from them.

d.      Siegel was advised that Nancy Morgan from Coral Gables Secretarial had been deposed before him and that she had provided a document dated March 21, 1995 that indicated he had called Morgan and provided her with telephone number 407-351-0011 as a contact and that he advised her that he wanted to set up a phone line there and to receive faxes and mail there immediately. Siegel identified the telephone number 407-351-0011 as belonging to Air Ship International, but he did not recall if he had told Morgan to do all the things stated in the note. At the bottom of the note was the address 9235 Ridge Pine Trail, Orlando, Florida, which Siegel identified as being PEARLMAN's home address at the time. Above the address on the note were the words Cohen & Siegel, P.A. Siegel stated he did not recall, but that he did not think he had anything to do with bringing up Cohen & Siegel.

e.      Siegel was advised that the note also stated "[f]or his boss accounting business" and "Air Ship International." Siegel denied that he told Morgan any of that information. Siegel was then presented with a note from Morgan dated March 21, 2005. After reviewing this note, Siegel did not recall if he had made any representations to Morgan regarding setting up Cohen & Siegel P.A. The address for mailing and billing on the note indicated a telephone number of 407-876-0465, which Siegel identified as the telephone number for PEARLMAN. The address on the note for PEARLMAN was listed as an address on Park Avenue in Windermere, Florida. Siegel confirmed that PEARLMAN resided on Park Avenue.

f.      Siegel was shown the note where his name was crossed out and where Rob Fischetti's name is written over his name. Siegel identified Fischetti as an individual who

9

worked for PEARLMAN. At the top of the note is the name Steve Kaplan. Siegel denied

knowing anyone by that name. Siegel was shown telephone number 444-8968 and denied ever

seeing the number. The name Kristin Finger appears on the note, and Siegel identified her as

doing secretarial and personal assistance type of work for PEARLMAN. Siegel identified Janet

(no last name) as PEARLMAN's "go to girl, go to assistant" and Mandy (no last name) as the

receptionist.

        g.      Siegel was shown a credit application for the Coral Gables Secretarial

account and denied that his handwriting was anywhere on the document. The credit application

indicated that the account should be billed to PEARLMAN. On the bottom of the application is

the name Stanley Cohen. Siegel denied knowing anyone by that name. Siegel was shown

numerous additional documents, which he claimed not to recall. Siegel was shown a check

drawn on a Trans Con Airlines account signed by Fischetti, made payable to Coral Gables

Secretarial.

        h.      Siegel indicated that when he left Trans Con Records, he had his lawyer

draw up a document that released him from all liability related to Trans Con Records. Siegel

stated he did so to "cover my butt". When asked who to ask about accounting questions, Siegel

indicated that it "all goes back to Lou," that "he holds a lot of stuff close to the vest," and that

"the master plan comes out of him." Siegel indicated that PEARLMAN had told him that he

(PEARLMAN) had a financial background.

      14.      The attorney for the Chow estate has told me about a website that he found for

Cohen & Siegel, www.cohensiegel.com. According to that website, Cohen & Siegel is an

independent partnership with an office located in downtown Coral Gables, Florida with

10

headquarters outside Frankfurt, Germany. The website represented that the firm was licensed to practice as certified public accountants in the States of New York and Florida. The German address listed for the firm is Gewerbering 5, DG Raum Links, 47623 Kevelaer, which is the same address as German Savings (another entity whose existence is questioned, see below). I attempted to access the website earlier this year, but was unsuccessful. It appears that the website has been taken down.

15.    While the website was working, the attorney for the Chow estate obtained two German addresses from the www.cohensiegel.com website. Those addresses are as follows:

Mainz: Industriestr. 16 - 55116 Mainz

Frankfort: Lyoner Strausse 26-60258 Franfort

According to the attorney for the Chow estate, one of the Chow's daughters visited the Frankfort address on or about February 1, 2007. She took pictures and interviewed building personnel. There was no indication that Cohen & Siegel had an office in the building and no indication that they ever had an office in the building. She also visited the other address in Mainz and determined it was an apartment building.

16.    Trans Con Airlines collected over $100 million from investors through a Trans Con Airlines program called the Employee Savings Investment Account (EISA). The State of Florida, Office of Financial Regulation (OFR) conducted an investigation of Trans Con Airlines EISA program. As a result of the investigation, the OFR determined that a significant amount, if not all, of the EISA funds are gone. During the investigation, OFR attempted to determine whether Cohen & Siegel is an actual accounting firm. During its investigation, the OFR obtained audited financial statements titled Financial Statements and Auditor's Report, Trans Continental

11

Airlines, Inc., Period May 1, 2004 to April 30, 2005, issued by Cohen & Siegel, Certified Public

Accountants. The OFR noted that there was no mention in those statements of the EISA program

liabilities or corresponding assets of any type. Nor was there any reference to inter company or

related company loans. Subsequent audited financial statements purportedly audited by Cohen

& Siegel also failed to mention the EISA program.

17.    The OFR attempted to locate Cohen & Siegel. The OFR determined, however,

that the address and phone of Cohen & Siegel were instead operated by a Coral Gables answering

service, Coral Gables Secretarial Services. Business records and a statement from the owner of

Coral Gable Secretarial indicate mail and bills sent to Cohen & Siegel located in Coral Gables,

Florida were forwarded to 9235 Ridge Pine Trail, Orlando, Florida, c/o Alan Siegel. Coral Gable

Secretarial indicated that Siegel had a boss named Louis Pearlman, who owns a company called

Air Ship International.

18.    The OFR has determined from Florida Secretary of State, Division of

Corporations, 1996 annual report filing for Air Ship International, Ltd. Corporation (another

PEARLMAN entity), the following connection between Air Ship International, Ltd. Corporation

and PEARLMAN:

| | |
|---|---|
| President and Director | Louis J. Pearlman |
| Address: | 9235 Ridge Pine Trail<br>Orlando, Florida 32819 |
| Registered Agent: | Alan Siegel |
| Address: | 7380 Sand Lake Road, Suite 350<br>Orlando, Florida 32819. |

12

19.     During its investigation, the OFR investigation located a website identified as that of Cohen & Siegel, Certified Public Accountants. The website provided that Cohen & Siegel is an independent partnership with one office located in downtown Coral Gables, Florida with headquarters outside Frankfurt, Germany and that it is licensed to practice as certified public accountants in the States of New York and Florida. The address listed for the firm is Gewerbering 5, DG Raum Links, 47623 Kevelaer, which is the same address as German Savings Bank (see below re German Savings Bank).

20.     I contacted the FBI Legal Attache (Legat) in Frankfort, Germany. SA Leroy Dempsey advised me, that based upon an official inquiry made by the FBI, the BunderKriminalAmt (BKA), German Federal Law Enforcement, reported to SA Dempsey that the accounting firm Cohen & Siegel does not exist and has never existed.

21.     Other attempts to confirm the existence of Cohen & Siegel have been unsuccessful.

a.     Checks with the Florida Department of Business and Professional Regulation failed to provide any certified public accountant license for Cohen & Siegel or Alan Siegel. There is a listing for a certified public accountant with the name of "Stanley Cohen," but the licensing information indicates that he is no longer in active status and that his address is in Tallahassee, Florida. Financial Investigator Brooks has told me that she has confirmed that the "Stanley Cohen" identified in the previous sentence did not work for Cohen & Siegel in Coral Gables, Florida.

13

b.    An investigator for a federally insured financial institution, American Bank of St. Paul also attempted to locate the offices for Cohen & Siegel in Germany. The investigator was unable to locate any such office.

c.    Another federally insured financial institution, MB Financial Bank NA, conducted an investigation into Cohen & Siegel and determined that the accounting firm does not exist.

22.    The only known evidence of the existence of Cohen & Siegel is as follows:

a.    On February 15, 2007, I talked with a representative of BOA who told me the following:

(1)    PEARLMAN flew representatives from BOA to Germany in September 2006. The group flew Continental Airlines. Pearlman represented to the group that the 757 that they were on was owned by Trans Con Airlines and, because of Trans Con Airlines ownership, he (PEARLMAN) was flying free. Upon arrival in Germany (exact location unknown), the group was driven for about an hour in a limo provided by PEARLMAN to what PEARLMAN represented was Cohen & Siegel PA in Mainz, Germany.

(2)    While at Cohen & Siegel PA, BOA representatives spoke with two individuals who claimed to be partners of Cohen & Siegel. The partners told the BOA representatives that Cohen & Siegel was founded in 1957, used to be part of Arthur Anderson and that the firm had Bayer, Luftansa and Mercedes as clients. The partners provided BOA officials with reference letters, told them they were licensed to practice in New York and Florida and that they had 100 employees with 28 partners.

14

b.      North American Capital Markets (NACM) is a mortgage broker that arranged financing for PEARLMAN and some of his entities at several banks. Representatives from NACM claim to have been flown to Germany by PEARLMAN (exact time unknown), and claim that they visited what was represented to be Cohen & Siegel PA. The NACM representatives took pictures which have been located in victim bank files. NACM representatives have been unavailable for interview.

c.      On March 1, 2007, John Hyltin told me of loan broker from New York (Carl Marks) who told Hyltin that PEARLMAN had flown him (Marks) to Germany to meet Cohen & Siegel in 2006. While in Dusseldorf, Germany, Marks was driven in a stretch limousine to an industrial area. Marks was taken to a building with Cohen & Siegel signs on it, and he met with a person who claimed to be an accountant with Cohen & Siegel. PEARLMAN accompanied Marks on this trip. Marks told Hyltin that he thought it was strange that an accounting firm would be located in an industrial area. At the time that this event occurred, Hyltin was a financial consultant for PEARLMAN.

## VI. GERMAN SAVINGS BANK

23.      Based on the investigation that has been conducted to date, Cohen & Siegel is not the only entity used by PEARLMAN and others that does not appear to exist. Another such entity is "German Investment Und Finanzberatung GmbH" or "German Savings", which is purported to be a German domiciled entity. For purposes of this Affidavit, that entity will be referred to as German Savings.

24.      As mentioned above, Trans Con Airlines collected over $100 million from investors through a Trans Con Airlines program called the Employee Savings Investment

15

Account (EISA). The OFR conducted an investigation into this matter and has determined that a significant amount, if not all, of the EISA funds are gone. While conducting the investigation and attempting to locate EISA funds, Trans Con Airlines provided OFR with a two page account summary that represented that approximately $39.5 million of EISA investor funds were located in an entity entitled "German Investment Und Finanzberatung GmbH" or "German Savings."

     25.     OFR was not able to locate a branch of German Savings located in the United States. OFR found a website for German Savings, which represented that it is a "national banking franchise" with over $2.9 billion. OFR pulled a Dun & Bradstreet report for German Savings, but the report indicated there was "insufficient information available" to provide a risk indicator rating. The report also indicated that the "sole authority in the business" resides in its managing director, Mitchell L. van Balen, date of birth 4-12-84 (22 years of age). The German Savings account statement reflects the business address of Gewerbering 5-47623 Kevelare, Deutschland, which is the same address that was provided as one of the German addresses listed for Cohen & Siegel CPA on the Cohen & Siegel website.

     26.     The OFR is not the only one that has been unsuccessful in finding anything that would confirm the existence of German Savings. During a civil proceeding between PEARLMAN and two of his former attorneys (Cheney Mason and William Pringle), an attorney for PEARLMAN, Michael Gay, provided Thomas Equels, an attorney for Mason and Pringle, with several documents purportedly from German Savings. I have reviewed some of those documents. The documents represent that a $1.5 million wire transfer will be made from German Savings to Equels in partial settlement of a lawsuit that had been brought by Mason against PEARLMAN. The documents contain the signature of Mr. L. Van Balen who is

16

represented as being the Managing Director of German Savings. The wire transfer was never made. Instead, Gay provided Equels with letters from German Savings setting forth several reasons why the wire transfer never arrived, including the wire being sent to the wrong account and a problem with United States Department of Homeland Security.

27.    American Bank of St. Paul, another bank insured by the FDIC, loaned money to PEARLMAN. After PEARLMAN fell behind in payments, American Bank of St. Paul received documents from German Savings Bank promising to pay the amounts that were due. The payments were never made. In response, American Bank of St. Paul hired an investigator who attempted to locate German Savings Bank in Germany. That investigator was unsuccessful in finding that bank.

## VIII. BANK FRAUD

28.    At all times relevant to this complaint, the accounts and deposits of Integra Bank were insured by the FDIC. Trans Con Airlines has two loans with Integra Bank that were made on September 18, 2004. The first loan is loan number 100084895 for $16 million. The other is loan number 100084894 for a line of credit for $3 million. Both loans are secured by 190,000 shares of preferred stock for Trans Con Airlines. In addition, PEARLMAN, a majority shareholder and President of Trans Con Airlines, has two loans with Integra Bank. One is loan number 100110544, dated August 23, 2006 for $400,000. The other is loan number 100111789, dated September 29, 2006 for $552,381

29.    In connection with these four loans, PEARLMAN, or someone acting on his behalf and at his direction, provided Integra Bank with audited financial statements that purported to come from the accounting firm of Cohen & Siegel. The financial statements were

17

for Trans Con Airlines and contained a clean opinion letter from Cohen & Siegel indicating they had audited the financial statements and that the financial statements "fairly" represented the financial position of Trans Con Airlines. The financial statements reflect a significant net worth and income for Trans Con Airlines. Trans Con Airlines financial statements for the year ended April 30, 2006, containing a clean opinion letter from Cohen & Siegel dated July 5, 2006, were submitted via facsimile to Integra Bank on or about September 15, 2006. Trans Con Airlines financial statements for the year ended April 30, 2005, which contained a clean opinion letter dated July 5, 2005 from Cohen & Siegel, were also submitted to Integra Bank. These financial statements also reflected a significant net worth and income for Trans Con Airlines. In addition, I have reviewed portions of a Credit Memorandum dated September 18, 2004 entered between Trans Con Airlines as the borrower and Integra Bank as the lender. In that document, financial information "reported on by Cohen & Siegel" is referenced as being supplied to Integra Bank regarding the "Financial Position: Solvency" of Trans Con Airlines. The Credit Memorandum states in part:

3.3    Financial Position: Solvency

(a)    The Borrower has heretofore furnished to the Lender consolidated and consolidating (to the extent that there is more than one Credit Party) balance sheet as of April 30, 2004 and the related consolidated and consolidating statements of income, cash flows and changes in stockholders' equity for the fiscal year then ended, as reported on by Cohen & Siegel, independent certified public accountant. Such financial statements (including the notes thereto) present fairly in all material respects the financial condition of the Borrower as of the end of such fiscal year and the results of its operations and cash flows for the fiscal year then ended, all in conformity with GAAP.

18

PEARLMAN executed the Credit Memorandum on behalf of Trans Con Airlines. The address identified in the Credit Memorandum for Trans Con Airlines at that time was 127 West Church Street, Suite 350, Orlando, Florida 32801, which is located in Orange County, in the Middle District of Florida.

30.    Over the past couple months, payments have not been made on any of the four loans identified above. Integra Bank repeatedly tried to arrange a workout for PEARLMAN and Trans Con Airlines to repay the loans, but no payment has been received. During Integra Bank's attempts to collect payment, PEARLMAN told Integra Bank that he was working with associates to get money from a trust in Germany. PEARLMAN gave various reasons for the delays in receiving payments from Germany. On December 11, 2006, PEARLMAN faxed a letter purportedly from German Savings to Integra Bank. The German Savings letter was also dated December 11, 2006 and confirmed that German Savings had wired $ 3.8 million to PEARLMAN. On the handwritten cover sheet to the facsimile, PEARLMAN wrote, in part, the following "See the attached confirmation of today's transfer from the Theodor Wullenkamper Trust. I'll explain the details when we speak. Thanks again + say hi to Mike (the remaining $ after your payment is my portion)".

31.    In addition to the Cohen & Siegel financial statements and the promise of payment from German Savings, PEARLMAN submitted or caused to be submitted to Integra Bank tax returns for Trans Con Airlines and personal tax returns for himself. According to the Internal Revenue Service, the 2003 and 2004 tax returns submitted to Integra Bank by PEARLMAN were never filed. The tax returns submitted to Integra Bank contained the signature of Stanley Kaplan of Cohen & Siegel, address 269 Giralda Avenue, Coral Gables,

19

Florida as the preparer. A 2004 IRS Form 1120 purportedly filed with the IRS for Trans Con Airlines was submitted to Integra Bank via facsimile on or about November 29, 2005. The tax return was for the fiscal year ended April 30, 2005 and reflected a taxable income of over $ 206 million. The return is signed by Stanley Kaplan, Cohen & Siegel on October 14, 2005. According to IRS records, this return was not filed. A similar Form 1120 2003, for the fiscal year ended April 30, 2004, was submitted to Integra Bank via facsimile on or about March 18, 2005. According to IRS records, this return was not filed.

32.    I have spoken with Martin Zorn of Integra Bank, and he told me that Integra Bank relied on the Trans Con Airlines financial statements audited by Cohen & Siegel expressing a clean opinion when granting the loans and in allowing the loans to remain outstanding. Zorn also told me that Integra Bank significantly relied upon the tax returns submitted to Integra Bank in granting the loans and in allowing the loans to remain outstanding.

33.    Documents prepared by Integra Bank and signed by PEARLMAN refer to Trans Con Airlines as a Florida Corporation. Addresses listed for Trans Con Airlines include the following:

        a.    1701 Park Center Drive
             Orlando, Florida 32835

        b.    127 West Church Street
             Suite 350
             Orlando, Florida 32801

        c.    7380 Sand Lake Road, Suite 350
             Orlando, Florida 32819

20

34.    Payments on the Integra Bank loans were made by Trans Con Airlines checks drawn on an account at Fifth Third Bank. The address listed on the Trans Con Airlines, Fifth Third checks is listed as follows:

       a.     127 West Church Street
                 Suite 350
                 Orlando, Florida 32801

35.    I was the affiant for two search warrants that were issued in Case No. 07-MJ-1052 for the offices of the companies collectively known as the "Trans Continental Companies," 124 West Pine Street, Orlando Florida 32801, and in Case No. 07-MJ-1053 for PEARLMAN's residence located at 12488 Park Avenue, Windermere, Florida 34786. The affidavits for those search warrants are incorporated by reference as if set forth fully herein, and copies of them are attached to this affidavit. On February 15, 2007, I participated in the execution of a search warrant of the offices of the companies collectively known as the "Trans Continental Companies," 124 West Pine Street, Orlando Florida 32801. Some of the items that were seized during the execution of that search warrant were copies of financial statements purportedly prepared by Cohen & Siegel, among other things. In addition, a handwritten draft of a letter for an accountant with the name of "Stanley Kaplan" was found during the execution of the search warrant of the offices of the companies collectively known as the "Trans Continental Companies," 124 West Pine Street, Orlando Florida 32801. From my participation in this investigation, I know that "Stanley Kaplan" is the alleged name of the one of the accountants at Cohen & Siegel. In the draft of the letter that was found, Kaplan is identified as a "Managing Partner." The letter states in part:

21

At Mr. Louis J. Pearlman's request, we hereby confirm the following as accountants for him as follows:

The handwritten draft letter is addressed to Mark Bruni, and it is dated November 6, 2006. The letter was found in the office belonging to Mandy Newland. I have spoken with Newland about the letter, and she confirmed that PEARLMAN provided it to her to type and that the handwriting on the letter is PEARLMAN's handwriting.

## XI. SUMMARY

36.    On the basis of the foregoing facts and evidence, I submit that probable cause exists to charge LOUIS J. PEARLMAN with a violation of Title 18, United States Code, Section 1344 (bank fraud), and respectfully request that the Court issue a Warrant for his arrest.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Scott R. Skinner
Federal Bureau of Investigation

Subscribed and sworn to before me
this ___2___ day of March, 2007.

The Honorable James G. Glazebrook
United States Magistrate Judge

22

**BOND RECOMMENDATION:**
AO 442 (Rev 5/85) Warrant for Arrest

# United States District Court

## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

UNITED STATES OF AMERICA

v.

LOUIS J. PEARLMAN

### WARRANT FOR ARREST

CASE NUMBER: 07-MJ- *10 79*

**To: The United States Marshal
   and any Authorized United States Officer**

YOU ARE HEREBY COMMANDED to arrest LOUIS J. PEARLMAN and bring him forthwith to the

nearest magistrate to answer a

☐ Indictment   ☐ Information   ☒ Complaint   ☐ Order of Court   ☐ Violation Notice   ☐ Probation Violation Petition

charging him with bank fraud,

In violation of Title 18, United States Code, Section 1344.

JAMES G. GLAZEBROOK
U. S. Magistrate Judge
Middle District of Florida
Name and Title of Issuing Officer

**UNITED STATES MAGISTRATE JUDGE**
Title of Issuing Officer

Signature of Issuing Officer

*Orlando, Florida March 2, 2007*
Date and Location

(By) Deputy Clerk

Bail fixed at $ _____     by     _____
                                         Name of Judicial Officer

| RETURN |
| --- |
| This warrant was received and executed with the arrest of the above-named defendant at |

| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
| --- | --- | --- |
| DATE OF ARREST | | |

**EXHIBIT**

*B*